CHIEF JUSTICE GRAY,
dissenting.
¶65 I respectfully dissent from the result the Court reaches in this case, from its analysis and application of the law regarding impossibility of performance, and from the inclusion in its opinion of constitutional issues not before us. My views overlap to some extent with those expressed by Justice Rice with regard to whether summary judgment was properly granted to Cape-France. They also overlap to some extent with Justice Leaphart’s views on the inclusion of the constitutional issues in the Court’s opinion. I write separately to clarify the basis for my inability to join the Court’s opinion in either respect.
¶66 To begin at the beginning, I agree with the Court that our review of a district court’s summary judgment is de novo and that we apply the same Rule 56, M.R.Civ.P., criteria as the district court. I also agree that it sometimes is appropriate in a case involving cross-motions for *529 summary judgment to confine our review to the trial court’s conclusions of law, on the theory that cross-motions constitute agreement that the material facts are undisputed. On the other hand, “the fact that both parties have moved for summary judgment does not establish, in and of itself, the absence of genuine issues of material fact.” Montana Metal Buildings, Inc. v. Shapiro (1997), 283 Mont. 471, 477, 942 P.2d 694, 698 (citation omitted). In the present case, it is my view that the material facts in this case are not undisputed and that the Court fails to perform an appropriate de novo review under Rule 56.
¶67 Rule 56 requires the trial court, and this Court, to render summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” In this case, the District Court’s order granting summary judgment to Cape-France states that the court was fully advised “[fjrom its review and consideration of the briefs and oral argument.” While this statement may be mere boilerplate and not an admission by the trial court that it did not actually review the record before it, the remainder of its order does not necessarily support such an interpretation of the court’s review. Indeed, the trial court merely stated-perhaps on the same basis as the related statement in this Court’s opinion that the facts are undisputed-that “the parties agree that there are no genuine issues of material fact.” In actual fact, however, Peed and Moore contended in their District Court brief opposing Cape-France’s motion for summary judgment that Cape-France was “unable to demonstrate the absence of genuine issues of material fact in support of its Motion for Summary Judgment.” They were correct in that court and they are correct in tins Court, as Justice Rice details.
¶68 In this regard, I note only a few examples of error in the District Court’s order. First, the District Court states-and this Court erroneously follows abadlead-thatthe DEQ informed Cape-France in a December 21, 1995, letter that the property at issue “was located within a groundwater contamination site.” The problem with this purported statement of fact is that nothing in the DEQ letter says the property was within a contamination site; the letter merely advised that the contamination “appears to be extending north but the extent of the contamination, is unknown.” Indeed, this Court implicitly corrects its erroneous statement later in the opinion when it observes that the DEQ letter advised that the proposed subdivision “could be” in an area of groundwater contamination.
¶69 As another example, the District Court’s order relates the parties’ competing arguments about when knowledge of the possibility of pollution near the subject property surfaced. Cape-France argued that new and significant facts, including that the plume passed into the area, became known only after the execution of the Buy-Sell Agreement. Peed and Moore argued, on the other hand, that Cape-France was aware of the potential pollution near the subject property *530 when the agreement was executed. Immediately following the parties’ respective contentions, the District Court states that it is undisputed that Cape-France was aware that the plume was moving northwesterly towards the subject property. Mysteriously, it then goes on to state as a matter of fact that “[t]he contamination was new, unexpected, [and] unknown....” These are inherently contradictory statements about a material factual issue.
¶70 Finally, in this regard, both the District Court and this Court make much of the following facts: that DEQ imposed a requirement that a test well be drilled after the agreement was executed, that Cape-France was “unwilling” to drill the test well, and that Peed and Moore were unwilling to provide Cape-France with a satisfactory indemnity agreement. The “materiality” of these facts is not at all clear to me and, to the extent the facts are material, the gloss placed on them by both courts is totally-and inappropriately-set forth in Cape-France’s favor. Both courts overlook the fact that the required test well was merely that, as Justice Rice points out. Both courts also overlook the fact that the Buy-Sell Agreement places responsibility for getting the subject property through subdivision requirements and approval on Cape-France, and that the test well was merely one remaining item-arguably capable of performance and certainly not unlawful-in that process. I simply cannot join the Court in speculating that contamination either does or will exist and that, if so, it “could” expose Cape-France to substantial financial liability and, on the basis of such speculation, concluding that Cape-France’s obligation to perform according to its contract is excused.
¶71 I raise these matters only to highlight the importance-and the Rule 56 requirement-of scrutinizing the facts of record in summary judgment proceedings to determine whether material factual issues remain for trial. For these and other reasons, I would conclude that genuine issues of material fact exist in the present case which precluded summary judgment in favor of Cape-France.
¶72 More importantly, however, I disagree with this Court’s discussion and application of the law of impossibility of performance. The Court begins by correctly stating Montana law on impossibility as set forth in our most recent cases on the subject: “[I]mpossibility of performance is a strict standard that can only be maintained where the circumstances truly dictate impossibility. The general rule is that, where a party to a contract obligates himself to a legal and possible performance, he must perform in accordance with the contract terms.” Barrett, decided in 1980, and 360 Ranch, decided in 1996, are nearly unequivocal in this regard and rightly so, since § 28-2-603, MCA, also requires that a contract be voided only where “wholly impossible of performance.” Moreover, 360 Ranch goes on to set out the few kinds of contract cases in which a district court properly could grant summary judgment on impossibility of performance. See 360 Ranch, 278 Mont. at 493, 926 P.2d at 263. Those examples do not include the circumstances presently before us. Rather, this is a case where, as we said in 360 Ranch, “whether performance of a contract was impossible *531 will be a question of fact, and summary judgment will not be appropriate.” 360 Ranch, 278 Mont, at 493, 926 P.2d at 263. As we did in that case, so must we in this case conclude, based on the record before us, that the question of impossibility of performance presents a genuine issue of material fact.
¶73 Instead of following either the substantive law or the approach contained in 360 Ranch, however, the Court inexplicably heads off in an entirely different direction, citing to our 1977 Smith decision for the proposition that impossibility of performance encompasses impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved. Smith predated both Barrett and 360 Ranch, and the referenced proposition has never since been repeated by this Court. From an outdated, one-shot opinion, the Court then goes off into every available jurisdiction and source to support its impracticability approach. My problem with the Court’s approach is that it essentially ignores controlling Montana case law on impossibility of performance and totally ignores § 28-2-603, MCA. I cannot agree. I would remand to the District Court for further proceedings and, ultimately, for the application of existing Montana law on impossibility of performance.
¶74 Finally, with regard to the constitutional issues discussed in the Court’s opinion, I agree with Justice Leaphart that we follow the longstanding and important principle that courts should avoid constitutional issues wherever possible. However, I do not agree that principle is applicable here for one simple reason: no constitutional issue was presented to the District Court and, indeed, appellants did not present such an issue to this Court. Consequently, I strenuously dissent from the Court’s insertion-and resolution, on its own and without full briefing-of a nonexistent constitutional issue into this case.
¶75 This case was tried and appealed on issues of impracticability/impossibility of performance and specific performance. Whatever our respective views on those matters, the Court resolves the appeal on the basis of impossibility of performance. Having so resolved the case, however, the Court then improperly inserts a discussion of a critically important constitutional right in Montana, the development of which through case law actually presenting the issue, is in its infancy. To that extent, the discussion is dicta in its entirety and, as a result, not controlling precedent. The problem is that dicta takes on a life of its own. The bigger problem is that the Montana constitutional rights relating to the environment are hugely important and impactful to the citizens of Montana and should not be dallied with by this Court in the absence of issues being raised in the District Court and fully briefed in this Court.
¶76 For the reasons stated above, I dissent from the Court’s opinion on the issue actually before us and strenuously dissent from its inappropriate insertion of the “clean and healthful” discussion, which will unnecessarily fan the flames of controversy in Montana.